FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 20, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIP D., | NO. 4:23-CV-5174-TOR |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| MARTIN O'MALLEY, Commissioner of Social Security, | |
| Defendant. | |

BEFORE THE COURT is Plaintiff's Motion for Summary Judgment. ECF No. 7. The matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 7) is **DENIED** and the final order of the Social Security Commissioner is **AFFIRMED**.

**JURISDICTION**

The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

1        **STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4    limited: the Commissioner's decision will be disturbed "only if it is not supported

5    by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6    1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7    relevant evidence that "a reasonable mind might accept as adequate to support a

8    conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently,

9    substantial evidence equates to "more than a mere scintilla[,] but less than a

10   preponderance." *Id.*  In determining whether this standard has been satisfied, a

11   reviewing court must consider the entire record as a whole rather than searching

12   for supporting evidence in isolation.  *Id.*

13       In reviewing a denial of benefits, a district court may not substitute its

14   judgment for that of the Commissioner.  If the evidence in the record "is

15   susceptible to more than one rational interpretation, [the court] must uphold the

16   [administrative law judge's] (ALJ's) findings if they are supported by inferences

17   reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th

18   Cir. 2012) (citation omitted).  Further, a district court "may not reverse an ALJ's

19   decision on account of an error that is harmless." *Id.*  An error is harmless "where

20   it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at

1115 (quotation and citation omitted).  The party appealing the ALJ's decision

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S.

396, 409–10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C.

§ 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 3

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several listed impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If an impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment meets or exceeds the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC) is defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations and is relevant to both the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1545(a)(1).

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he has previously performed ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the Commissioner will conclude that the claimant is disabled and therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work

1  "exists in significant numbers in the national economy."  20 C.F.R. § 416.1560(c);

2  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

3  **ALJ'S FINDINGS**

4  Plaintiff applied for disability insurance benefits on April 14, 2021, alleging

5  a disability onset date of August 31, 2020.  Tr. 89.  Plaintiff's claim was initially

6  denied on November 18, 2021, and denied again upon reconsideration on February

7  1, 2022.  Tr. 110, 116.  Plaintiff requested a hearing.  Tr. 120.  A telephonic

8  hearing was held before an ALJ on March 9, 2023.  Tr. 43.  On May 4, 2023, the

9  ALJ denied Plaintiff's claim.  Tr. 18.  The Appeals Council denied Plaintiff's

10  request for review on November 14, 2023.  Tr. 5.

11  As a threshold matter, the ALJ found Plaintiff met the insured status

12  requirements of the Social Security Act through December 31, 2025.  Tr. 22-23.

13  At the first step of the sequential evaluation process, the ALJ determined that

14  Plaintiff had not engaged in substantial gainful activity since August 31, 2020.  Tr.

15  23.  At step two, the ALJ identified the following severe impairments:

16  posttraumatic stress disorder (PTSD), right ankle traumatic arthropathy (post-

17  surgery), and bilateral carpal tunnel syndrome (post-surgery).  *Id.*  The ALJ

18  decided that Plaintiff's chronic skin condition was non-severe.  Tr. 24.  At step

19  three, the ALJ found Plaintiff did not have an impairment or combination of

20  impairments that met or medically equaled the severity of a listed impairment.  Tr.

24-27.  Following that, the ALJ found that Plaintiff had the RFC to perform

medium work as defined in 20 C.F.R. § 404.1567(c), with the following

limitations:

> [H]e is limited to no more than frequent handling and fingering
> bilaterally; he is limited to low stress work with no production
> pace/conveyor belt-type work (non-worker controlled pace); he needs
> a predictable work environment; and is limited to brief and superficial
> interaction with the public, co-workers, and supervisors (though
> interaction with supervisors can increase as necessary for training).

Tr. 27.

At step four, the ALJ stated that Plaintiff was unable to perform any past

relevant work.  Tr. 35-36.  At step five, the ALJ noted that Plaintiff's ability to

perform a full range of medium work was impeded by additional limitations and

solicited testimony from an impartial vocational expert as to "the extent to which

these limitations erode[d] the unskilled medium occupational base."  Tr. 37.  The

vocational expert testified that Plaintiff could find employment as an (1) industrial

cleaner, (2) auto detailer, or (3) floor waxer.  Tr. 37.  Based on the testimony of the

vocational expert, the ALJ concluded that Plaintiff was capable of making a

successful adjustment to other jobs which existed in significant numbers in the

national economy.  Tr. 36.  Accordingly, the ALJ determined that Plaintiff had not

been under a disability from August 31, 2020 through May 4, 2023.  Tr. 37.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff submits the following four issues for judicial review:

1. Whether the ALJ properly determined Plaintiff's skin conditions were non-severe and did not meet or medically equal the severity of a listed impairment;

2. Whether the ALJ properly rejected Plaintiff's subjective symptom testimony;

3. Whether the ALJ properly evaluated Dr. Cook's medical assessment; and

4. Whether the hypothetical the ALJ posed to the vocational expert included all of Plaintiff's limitations.

ECF No. 7 at 4.

**I.     Skin Conditions**

Plaintiff suffers from psoriasis, which causes rashes and patchiness, and actinic keratosis, which causes his skin to break out in lesions.  *See* Tr. 532.  Both skin disorders are reported to worsen with mental stress.  Tr. 24.  At step two, the ALJ reviewed the medical evidence and concluded Plaintiff's skin disorders were non-severe.  *Id.*  At step three, the ALJ found that Plaintiff's disorders did not meet or medically equal the severity of a listed impairment.  *Id.* at 26.

Plaintiff asserts the ALJ's findings regarding his skin condition at steps two and three are unsupported by substantial evidence.  ECF No. 7 at 7.  Although

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 8

Plaintiff admits that he experienced some improvements in his condition during the period of disability, he attributes these changes to the fact that he was not working during that period and argues that a return to employment would trigger more frequent flareups. *Id.* at 9-10. He likewise argues that the ALJ erred in finding that his symptoms did not meet the 12-month durational requirement. *Id.* Separately, Plaintiff contends that the ALJ should have found that his skin condition causing lesions met or medically equaled the severity of Listing 8.09 (formerly Listing 8.05). *Id.* at 7.

The Court begins by analyzing Plaintiff's claim under step two. As mentioned, the claimant must suffer from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities" in order for the ALJ to find the plaintiff's condition severe at step two. 20 C.F.R. § 404.1520(c). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522. Unless the impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The task of the reviewing court is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).  Step two is "a *de minimis* screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

The Court finds that the ALJ's determination that Plaintiff's skin disorders were non-severe is supported by substantial evidence.  The ALJ reviewed the medical record and concluded that Plaintiff's ability to perform basic work activities was not affected by his skin disorders.  Tr. 24.  Specifically, the ALJ reasoned that Plaintiff's symptoms were mild or transient, under control with treatment, and had not persisted for a durational period of at least 12 consecutive months.  *Id.*  The ALJ also noted that the limited medical record did not establish the symptoms were ongoing.  *Id.*  However, the ALJ accounted for "all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]."  *Id.*

Plaintiff represents that his condition did persist for over a year.  However, the relevant regulation requires an impairment to last or be expected to last "for a *continuous* period of at least 12 months."  20 C.F.R. § 404.1509 (emphasis added).  By his own admission, Plaintiff's skin disorders waxed and waned in response to treatment and other external and environmental factors, such as cold weather.  *See* ECF No. 7 at 8 (conceding that skin conditions improved when he was no longer in stressful situations); Tr. 535 ("Psoriasis is chronic in nature with periods of remissions and flares"), 538.  While the treatment record does suggest that Plaintiff

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 10

had some lesions for one year, Tr. 532, his lesions were noted to be generally "asymptomatic," Tr. 730, "stable," and "mild in severity," Tr. 538.  Moreover, even if the duration of Plaintiff's conditions did meet or exceed 12 months, the medical record before the Court establishes that Plaintiff's symptoms tended to improve with treatment.  *See, e.g.*, Tr. 538 (Plaintiff's psoriasis cleared with use of medicated ointment).

Plaintiff argues in response that his flare-ups are stress-induced and that returning to work would aggravate his skin conditions.  ECF No. 7 at 8.  Although the treatment record does support that stress can trigger breakouts, Plaintiff's provider also documented that flares may be triggered by infections, certain medications, alcohol, and wintry environmental conditions.  Tr. 534, 538.  There is no telling to what extent, if any, these other factors have impacted Plaintiff's flare ups.  Further, as discussed in Part II. of the Court's analysis, Plaintiff was able to engage in a number of high-function physical activities despite his ongoing skin troubles, which indicates that Plaintiff could perform basic work activities.  Finally, to the extent that any error was committed at this step, it was harmless because the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]."  Tr. 24.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 11

1    For the same reasons, the Court finds that the ALJ did not err at step three in

2    finding that Plaintiff's skin disorders did not meet or medically equal the severity

3    of a listed impairment.  20 C.F.R. 404.1520(d).  Listing 8.05 no longer exists and

4    has been incorporated into Listing 8.09; however, both listings include that the

5    presence of "chronic" (Listing 8.09) or "extensive" (Listing 8.05) skin lesions for

6    more than three months despite "continued" prescribed treatment require a finding

7    of disability.  20 C.F.R. 404, Subpt. P., App. 1, §§ 805, 809.  In this case, as the

8    ALJ discussed, Plaintiff's lesions and related symptoms improved with treatment.

9    Tr. 26.  As such, the Court concludes that the ALJ's analysis of Plaintiff's skin

10   disorder was under steps two or three was supported by substantial evidence.

11   **II.    Subjective Symptom Testimony**

12       The underlying order reported that while Plaintiff's medically determinable

13   impairments could be reasonably expected to produce some of his alleged

14   symptoms, certain statements by Plaintiff "concerning the intensity, persistence

15   and limiting effects of these symptoms are not entirely consistent with the medical

16   evidence and other evidence in the record."  Tr. 29.  Plaintiff challenges this

17   determination, arguing that the longitudinal record supports his symptoms and that

18   the ALJ's analysis is based on a misunderstanding of his activities of daily living.

19   ECF No. 7 at 12-13.

20       An ALJ engages in a two-step analysis to determine whether to discount a

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 12

claimant's testimony regarding his subjective symptoms.  SSR 16-3p, 2016 WL

1119029, at *2.  "First, the ALJ must determine whether there is 'objective

medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

claimant is not required to show that [the claimant's] impairment 'could reasonably

be expected to cause the severity of the symptom [the claimant] has alleged; [the

claimant] need only show that it could reasonably have caused some degree of the

symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035–36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why he or she discounted claimant's symptom claims).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 13

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7–8; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that the record was inconsistent with the reported severity of some of Plaintiff's physical symptoms.  Tr. 28.  Plaintiff alleged he was disabled due to a right ankle injury, post-surgery.  However, the ALJ found that most of the treatment record was generally conservative and that Plaintiff's symptoms were well-managed through a regiment of medication, physical therapy, and injections.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 14

Tr. 29; *see, e.g.*, Tr. 630 (noting that Plaintiff's complaints of pain had "greatly resolved" with a cortisone shot).  Respecting Plaintiff's right ankle arthroscopy surgery in October 2020, Plaintiff's ankle healed well and Plaintiff made positive progress following surgery.  *See, e.g.*, Tr. 587 (10 weeks out from surgery, transitioning from the boot into regular shoes, noting 0/10 pain); 596 (developing a physical therapy plan to address Plaintiff's pain and limping 14-weeks post-surgery); 599 (noting that Plaintiff's ankle "feels a little better" and that "[h]e has eased back into his insanity workouts that he likes"); 608 (despite some weakness, "his ankle feels good, no pain" during and after spin classes); 627 (stating his ankle is doing well enough that he would like to transition to home management).  As such, it was not error for the ALJ to reject the Plaintiff's symptom testimony due to the presence of objective medical records which tended to establish Plaintiff's symptoms of right ankle pain were generally resolved by surgery and conservative treatment.

Plaintiff also testified that he was disabled due to bilateral carpal tunnel syndrome, also post-surgery (both left and right wrists).  There, too, the ALJ correctly determined that the medical records on the whole supported that the surgical operations improved Plaintiff's pain and functioning.  Tr. 30; *see, e.g.*, Tr. 740 (noting 0/10 pain 14 weeks post-surgery and 3/10 pain with use in right side; improved from 5/10 pain shortly after the surgery); 742 (0/10 pain in left wrist

post-surgery with some aches at night).  Although Plaintiff continued to receive

post-operative treatment, it was reported that he was making good progress

towards his goals, which included being independent with his home program,

bearing full weight on his upper left extremity to practice yoga, improving his grip

and pinch strength, and participating in household tasks without symptoms.  Tr. at

755-56.  Therefore, Plaintiff's post-operative treatment record and functional

ability does not support the contention that he is disabled due to ongoing wrist

pain.

The ALJ also appropriately determined that Plaintiff's physical symptom

testimony was undercut by his engagement in high-function activities.  During the

period of alleged disability, Plaintiff underwent multiple elective cosmetic surgical

procedures, which he recovered from without incident.  *See* Tr. 543-81.  Although

Plaintiff no longer golfed, an activity he once enjoyed, Tr. 668, during the same

period he participated in "insanity" workouts and spin classes, went on hikes,

managed his own self-care and household chores, and cared independently for his

two dogs as well as assisting his elderly mother with her pets, Tr. 489-90.  The

Court agrees with the ALJ that these activities—particularly Plaintiff's regular

exercise activities, elective procedures, and assumption of care for his mother's

pets—constitute the sort of high-function activities which do not support a finding

of disability.  *Compare, e.g.*, *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F.

Supp. 3d 1025, 1036 (D. Or. 2022) (Plaintiff's difficulties with managing her own hygiene, going grocery shopping, preparing meals, and maintaining custody of her children supported her subjective symptom testimony).

Plaintiff also submits that he is disabled due to PTSD and anxiety stemming from his mistreatment as a whistleblower of his former employer, a well-known government contractor. Tr. 28. Plaintiff exposed the fraud and abuses going on in his workplace led the U.S. Department of Justice to intervene in Plaintiff's lawsuit and resulted in a multi-million dollar settlement by his former employer. Tr. 224. As an employee, Plaintiff was repeatedly berated and harassed for raising concerns about the integrity of his workplace. Tr. 471-72. Plaintiff received a windfall from the settlement monies but had to agree not to return to work for his former employer.

While the ALJ noted that some symptomology of PTSD, anxiety or depression was present in the record, Plaintiff's mental screenings were "largely within normal limits." Tr. 31; *see also* Tr. 490 (Plaintiff was oriented x4, stayed on task, and demonstrated normal intellect, judgment, and insight). Plaintiff did not treat his mental illnesses with medication, and was self-aware that his fears, nightmares, and general paranoia reflected things he knew not to be true. Tr. 488, 498. Additionally, many of Plaintiff's therapeutic notes established that he was more concerned with healing his relationships and sense of isolation than his PTSD

1    symptomology.  Tr. 32, 673, 679, 682.  Accordingly, Plaintiff's daily activities and

2    the medical record as a whole—including Plaintiff's reported treatment,

3    functioning, and pain—supports the ALJ's rejection of Plaintiff's subjective

4    symptom testimony.

5    **III.    Medical Opinion of Dr. Cook**

6        Plaintiff ascribes error to the ALJ's evaluation of Dr. Diana Cook's medical

7    opinion.  ECF No. 7 at 13-18.  Under the new Social Security regulations, the ALJ

8    will no longer "give any specific evidentiary weight . . . to any medical

9    opinion(s)."  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–

10    68.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical

11    opinions or prior administrative medical findings from medical sources.  20 C.F.R.

12    §§ 404.1520c(a)–(b), 416.920c(a)–(b).  The factors for evaluating the

13    persuasiveness of medical opinions and prior administrative medical findings

14    include supportability, consistency, relationship with the claimant, specialization,

15    and "other factors that tend to support or contradict a medical opinion or prior

16    administrative medical finding," including but not limited to "evidence showing a

17    medical source has familiarity with the other evidence in the claim or an

18    understanding of our disability program's policies and evidentiary requirements."

19    20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

20        The ALJ is required to explain how the most important factors,

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 18

supportability and consistency, were considered.  20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  Those factors are defined as follows:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive

factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§

404.1520c(b)(2); 416.920c(b)(2).  However, where two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the most persuasive factors" were considered.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ

to provide "specific and legitimate" reasons for rejecting an examining doctor's

opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As a result, the

ALJ's decision for discrediting any medical opinion "must simply be supported by

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 19

substantial evidence." *Id.*

The ALJ found Dr. Cook's opinion to be "only partially persuasive." Tr. 33. The ALJ determined that Dr. Cook's assessment that Plaintiff would have (1) mild to moderate impairment in workplace functioning and (2) no difficulty with simple and repetitive or detailed and complex tasks was generally consistent with the longitudinal record. *Id.* However, the ALJ disagreed with Dr. Cook's opinion that Plaintiff would encounter marked limitations in dealing with (1) workplace stress and (2) maintaining attendance, writing:

> [T]he opinion is based on a one-time consultative evaluation, and [Dr. Cook] has no history of treating the claimant for the diagnoses assessed. Furthermore, the opined marked limitations are not consistent with the claimant's mental status exam . . . [or] the other evidence of record.

Tr. 33-34.

Plaintiff contends this analysis is unsupported by substantial evidence. The ALJ's assessment of the reliability of Dr. Cook's medical opinion was adequately explained and supported by substantial evidence. As to the supportability factor, the ALJ appropriately relied upon the fact that Dr. Cook did not have an established patient-provider relationship with Plaintiff and that the exam was intended to be a one-time consultation. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (noting that limited treatment relationships may be unreliable). Respecting the consistency factor, the ALJ correctly noted that Dr.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 20

Cook's own mental status examination of Plaintiff undercut some of her

conclusions regarding Plaintiff's limitations, as did "other evidence of record,"

such as Plaintiff's engagement in various activities.  The ALJ's explanation of

these factors was adequate and these findings are therefore supported by

substantial evidence.  The Court holds that the ALJ appropriately assessed the

medical opinion of Dr. Cook by explaining how he considered the supportability

and consistency factors.

**IV.    Testimony of Vocational Expert**

Finally, Plaintiff challenges the ALJ's assessment at step five, arguing that

the hypothetical posed to the vocational expert was incomplete and incorrect.  ECF

No. 7 at 19.  In questioning the expert, the ALJ posed the following hypothetical:

> Let's assume [there's] a person of claimant's age, education, and work
> experience who could work at the medium level.  And this person,
> however, would be limited to no more than frequent handling and
> fingering.  And let's see, this person would need low stress work and
> by that I mean no production pace conveyor belt, non-worker controlled
> pace and a predictable work environment with minimal or no more than
> brief and superficial interaction with the public, coworkers, and
> supervisors, although interaction with supervisors could increase when
> necessary for training.

Tr. 78.

Plaintiff's challenge to the testimony of the vocational expert is premised on

the assumption that the hypothetical did not contain all of his asserted limitations.

As the Defendant observes, this contention simply repackages Plaintiff's

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ~ 21

"arguments about the evaluation of his testimony and [the medical] opinion testimony." ECF No. 8 at 10-11. The ALJ included the limitations which he found credible and supported by substantial evidence, and nothing further was required. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding the ALJ's reliance on a vocational expert's testimony was proper where the hypothetical posed contained limitations that the ALJ deemed credible). As such, the ALJ did not err in relying upon the vocational expert's testimony.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free from harmful error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 7) is **DENIED**.

2. The final decision of the Social Security Commissioner denying Plaintiff's application for Title II benefits is **AFFIRMED**.

The District Court Executive is directed to enter this Order, enter judgment in favor of Defendant, furnish copies to counsel, and **CLOSE** the file.

DATED May 20, 2024.



THOMAS O. RICE
United States District Judge